IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MONIQUE PARKER,
    Plaintiff,

v().                                                     No:  3:07cv450/MCR/MD

MICHAEL J. ASTRUE,
Commissioner of Social Security,
    Defendant.
_____

REPORT AND RECOMMENDATION

    This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Parker's application for disability insurance benefits under Title II of the Act.

    Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

PROCEDURAL HISTORY

    Plaintiff filed an application for disability benefits claiming a disability onset date of May 19, 2004.  The application was denied initially and on reconsideration and plaintiff requested a hearing before an Administrative Law Judge (ALJ).  A

hearing was held on April 24, 2007 at which plaintiff was represented by counsel and testified. A vocational expert also testified. The ALJ rendered an unfavorable decision on May 18, 2007 (tr. 20-28) and the Appeals Council declined review (tr. 507), making the decision of the ALJ the final decision of the Commissioner, and therefore subject to review in this court. *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998). This timely appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that plaintiff had severe impairments of lumbar degenerative disc disease, lumbar radiculopathy, lumbar facet syndrome and chronic pain syndrome, but that she did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; that she had the residual functional capacity to perform a reduced range of sedentary work with certain limitations; that she was unable to perform her past relevant work; that she was 45 years old with a high school education; that considering her age, education, work experience and residual functional capacity there were jobs that existed in significant numbers in the national economy that she could perform; and that she was not disabled as defined in the Act.

## STANDARD OF REVIEW

The ALJ's decision will be reversed only if it is not supported by substantial evidence. *Falge, supra*. The court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether it is premised upon correct legal principles. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983). In determining whether substantial

evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)(citations omitted). **Findings of fact by the Commissioner that are supported by substantial evidence are conclusive.** 42 U.S.C. § 405(g); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps. A finding of disability or no disability at any step renders further evaluation unnecessary. The steps are:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. *Chester v. Bowen*, supra, 792 F.2d at 131; *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, claimant must prove that she cannot perform the work suggested by the Commissioner. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

Although plaintiff did not claim an onset of disability until May 19, 2004, the medical records in the administrative record begin on July 16, 2001 when she saw her family physician, Earl Crosswright, M.D. complaining of fatigue (tr. 283-285). Shortly thereafter, she complained of elbow pain (tr. 282). When her problems, now including leg pain, persisted, she was referred to a neurologist, George Dmytrenko, M.D., who reported on October 1, 2001 that nerve conduction studies and an electromyogram (EMG) of plaintiff's arms and legs were read as normal (tr. 172-173). Plaintiff returned to Dr. Dmytrenko for follow up on December 10, 2001. He indicated that the EMG and nerve conduction studies were normal and that he did not see a cause for plaintiff's generalized weakness (tr. 160).

The next spring, in April 2002, plaintiff was still complaining of weakness and leg pain (tr. 279-280), and was referred to a rheumatologist, Ellen McKnight, M.D. Physical examination was essentially benign. Muscle strength and reflexes were normal, sensory was intact, there was normal range of motion throughout other than some discomfort in the right hip (tr. 188-191). Dr. McKnight saw plaintiff again on August 2, 2002 and reviewed a total body bone scan which was normal (tr. 187). On November 18, 2002, Dr. McKnight noted that a muscle biopsy had been done which was negative, and an MRI of the head was negative. Dr. McKnight's impression was atypical leg pain with symptoms most consistent with a peripheral neuropathy (tr.

186).  Dr. McKnight saw plaintiff again in February 2003 and again in April 2003, essentially unchanged (tr. 184-185).

Also in February of 2003 plaintiff returned to Dr. Dmytrenko who repeated his nerve conduction studies and EMG, again with negative results.  He opined that plaintiff's leg pain was caused by adductor spasm and anxiety (tr. 157-165).

On April 29, 2003 an MRI of plaintiff's lumbar spine was read as showing mild discogenic changes of the L2-3 and L3-4 levels without frank disc herniation or other acute process.  There was "[n]o abnormality identified to account for the patient's clinical symptoms." (tr. 163)

Plaintiff returned to Dr. McKnight in August 2003 still having problems with her legs, mostly in the right ankle and right foot, otherwise unchanged (tr. 183).  The last time plaintiff saw Dr. McKnight was on November 18, 2003.  Her physical examination was normal, x-rays were normal and Dr. McKnight's assessment was atypical leg pain and a history of muscular weakness (tr. 181).

In April 2004, shortly before plaintiff's claimed onset of disability, she reported to her family physician, Dr. Crosswright, that she was having severe low back pain.  On examination there was decreased abduction and extension of the left hip and there was decreased extension of the spine with muscle spasms and complaints of pain in the lower spine (tr. 270-271).  Dr. Crosswright ordered a repeat MRI which was performed on April 15, 2002 and disclosed disc dessication with minimal bulging and a small central annular tear at L2-3 along with bulging and dessication at L3-4 without protrusion.  The radiologist noted that there was no significant change from the examination of April 2003 (tr. 294).  X-rays of the hip and pelvis taken on April 22, 2004 were read as normal (tr. 296).

Dr. Crosswright next referred the plaintiff to Barry Lurate, M.D., an orthopedic surgeon who first saw plaintiff on June 29, 2004.  On physical examination there was reduced forward flexion in the low back and poor extension and localized subjective complaints at the level of L5-S1.  Hip rotation did not produce pain.  Neurologically

there were no focal motor deficits but plaintiff claimed global weakness in her left leg.  There were no obvious sensory abnormalities other than some intermittent subjective diminished sensation of the left thigh.  Straight leg raising was negative and deep tendon reflexes were normal and symmetric.  Dr. Lurate noted that spine x-rays were largely unremarkable, the MRIs were fairly unimpressive with some dessication but no significant bulging or other neuroforaminal compromise and Dr. Lurate did not feel that surgery was indicated (tr. 305-306).  Nevertheless, a discogram was performed which showed radicular pain at L2-3 and L1-2 (tr. 304).  Based on this, Dr. Lurate decided to do a percutaneous discectomy but during the surgery could not provoke any symptomatology at any relevant level, and consequently aborted the procedure (tr. 195-196).  Shortly thereafter, on August 17, 2004, Dr. Lurate remarked that plaintiff's description of her pain was somewhat different from her usual back pain complaints and had become fairly wide ranging and not well localized to the lumbar spine.  Dr. Lurate therefore felt that care might best be managed by a rheumatology evaluation or by a psychiatrist (tr. 303).  Plaintiff did not see Dr. Lurate again until approximately one year later.  On June 28, 2005, he noted that he did not feel comfortable offering plaintiff any surgical intervention because it would be associated with a high rate of failure.  He noted there were stark inconsistencies between three separate discogram and objective imaging studies and was at a loss to offer her anything from a surgical standpoint (tr. 300).  Plaintiff saw Dr. Lurate one more time, on August 15, 2005, now for complaints of left wrist pain.  Dr. Lurate felt this might have something to do with possible radial nerve entrapment in the cervical spine, and scheduled her for an MRI (tr. 299).  There is no record that an MRI of the plaintiff's neck was ever done.

     Also in the summer of 2005 plaintiff was being treated by a pain management specialist, Kurt Krueger, M.D.  On June 6, 2005 Dr. Krueger wrote a letter, apparently to plaintiff's employer, stating that plaintiff had a difficult problem, both as to diagnosis and treatment.  Her pain generally appeared to be at the L2-3 and L3-4

discs but there did not seem to be a surgical remedy.  He noted that she presently was limited as to her work capabilities in that she should not stand for any length of time but that a sedentary duty position might be tolerated assuming she would not have to be upright for any length of time (tr. 248).  During the rest of 2005 Dr. Krueger administered several lumbar epidural steroid injections, all of which gave temporary but not significant relief (tr. 417-420, 424-427).

In early 2006 Dr. Crosswright referred the plaintiff to a Birmingham, Alabama, neurosurgeon, Colby Maher, M.D.  Plaintiff's arms and upper body were normal on physical examination.  Her legs revealed diffuse 4/5 strength which appeared to be give-way in both but there was no focal evidence of weakness.  Sensory exam was intact, reflexes were somewhat diminished, she was able to heel and toe walk effectively with a stable gait.  Straight leg raising was negative.  There was limited range of motion in her lumbar spine secondary to pain.  Dr. Maher reviewed the earlier MRIs and noted a mild bulge with annular tears but no foraminal stenosis. He could not find an overtly obvious pain generator and felt that plaintiff was not a very good candidate for lumbar fusion (tr. 430-431).

In early April 2006 plaintiff was seen by David LeMay, M.D., a neurologist. Electrodiagnostic studies revealed no evidence of acute radiculopathy but there was neuropathic motor units present at the L4-5 on the right which "could be consistent with a chronic L4 and L5 radiculopathy or a past radiculopathy with re-intervention present." (Tr. 350).  Plaintiff saw Dr. LeMay in November of 2006 and January 2007 but nothing related to her back was noted (tr. 390-393).

During this entire six year period, plaintiff continued to see Dr. Crosswright. Dr. Crosswright's office notes did not record any specific physical examinations of note but mostly noted that plaintiff was being referred to the various specialists referred to above.  On August 18, 2006 Dr. Crosswright filled out a document entitled "Assessment of Physical Residual Functional Capacity" in which he checked blanks indicating that during an eight hour workday, plaintiff could walk for less than one

hour, stand for less than one hour, sit for less than one hour, could lift up to 10 pounds occasionally, would require frequent rest periods of 20-30 minutes duration during the day, and was disabled from full-time continuous employment (tr. 344-345).

The State Office of Disability Determinations referred plaintiff to Leo Chen, M.D., an orthopedic surgeon for evaluation on January 26, 2007. Plaintiff reported that she had significant back pain, progressively worse, which was severe and felt like stabbing. There was minimal numbness or tingling and minimal complaints regarding her arms and neck. She reported that had used a cane for a year or so and that injections had not helped. X-rays of the low back showed no obvious acute bony injury and only mild degenerative disc disease consistent with her age. Bilateral hip and pelvis x-rays showed that her joint spaces were fairly well maintained and there was no acute bony injury. On physical examination there was exquisite limited range of motion in her lumbar spine but the remainder of her lower extremities had good passive range of motion. Active range of motion was limited by pain. Plaintiff walked with a cane, favoring her left leg, but was grossly intact from a neurovascular standpoint. Deep tendon reflexes were slightly decreased but symmetrical, and sensation was grossly intact. There was significant spasm in the back, straight leg raising was positive and plaintiff was unable to toe or heel walk. There was diffuse weakness in the legs on manual testing of about 4/5 and grip strength was 5/5. There was no other focal abnormality. Dr. Chen indicated that he reviewed plaintiff's history, x-rays and other records and indicated that she would have some limitations on her ability to perform work-related function. The limitations were noted on a form upon which Dr. Chen opined that plaintiff could lift less than 10 pounds frequently, would be required to use an assistive device for ambulation, would have to alternate sitting and standing periodically, and could not push or pull with her lower extremities (tr. 405-413).

In addition to Dr. Chen's evaluation, plaintiff was referred by her attorney to Stephen Slobodian, M.D., who specializes in physical medicine and rehabilitation.

Dr. Slobodian saw plaintiff on August 1, 2006. He reviewed the entirety of plaintiff's medical records and took a complete history. On physical examination there was some tenderness from the neck all the way down to the low back. Plaintiff reported pain at the level of 10 out of 10 throughout her back. Muscle testing was slightly reduced but symmetrical with the same results in the knees and hips. Straight leg raising was negative but plaintiff was unable to toe walk. Dr. Slobodian recommended further imaging studies of the neck and mid spine. He noted that plaintiff had been seen by multiple physicians who had made extensive evaluations and MRI scans. No specific abnormalities were noted aside from annular tears present on the MRI scans of the lumbar spine and Dr. Slobodian recommended against surgical intervention "unless a clear diagnosis has been established." (Tr. 340-342).

## DISCUSSION

The plaintiff argues that the ALJ erred in failing to give proper weight to the opinions of her treating physicians, in improperly rejecting plaintiff's subjective complaints of pain, in disregarding the Commissioner's regulations and rulings concerning job descriptions, and in improperly evaluating plaintiff's daily activities. Plaintiff contends that she was disabled from her onset date as a matter of law. The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained. The issue thus presented is whether the ALJ's decision that the plaintiff was not disabled, in light of her physical condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

**1. & 2.        Treating physicians' opinions and plaintiff's subjective complaints of pain.**

Plaintiff first contends that the ALJ erred in discounting the opinions of her treating physicians. Plaintiff further asserts that the ALJ improperly discounted her subjective complaints of pain without even discussing those complaints. Because the two issues are closely intertwined in this case they will be addressed together.

**Legal standard - Treating physician opinions.**

Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-1241 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Broughton v. Heckler,* 776 F.2d 960, 960-961 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). "Good cause" exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips,* 357 F.3d at 1241; see also *Lewis,* 125 F.3d at 1440 (citing cases).

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimants impairments. See *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen,* 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) medical evidence supporting the opinion; consistency

with the record as a whole; 5) specialization in the medical impairments at issue; and 6) other factors which tend to support or contradict the opinion. 20 C.F.R. 404.1527(d).

The opinion of a non-examining physician is entitled to little weight, and, if contrary to the opinion of a treating physician, is not good cause for disregarding the opinion of the treating physician, whose opinion generally carries greater weight. *See* 20 C.F.R. § § 404.1527(d)(1); *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985); *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1255 (M.D.Fla. 2005). However, a brief and conclusory statement that is not supported by medical findings, even if made by a treating physician, is not persuasive evidence of disability. *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987); *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir. 1980).

"When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Phillips*, 352 F.3d at 1241. Failure to do so is reversible error. *Lewis*, 125 F.3d at 1440 (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986));[1] *see also Nyberg v. Commissioner of Social Security*, 179 Fed.Appx. 589, 591 (11th Cir. 2006) (Table, text in WESTLAW)(also citing *MacGregor*).

**Legal standard - Subjective complaints of pain.**

Pain is treated by the Regulations as a symptom of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." *Accord* 20 C.F.R. § 416.929. The Eleventh Circuit has articulated the three-part pain standard, sometimes referred to as the *Hand*[2] test, as follows:

---

[1] *MacGregor* further held that "Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true." 786 F.2d at 1053.

[2] *Hand v. Bowen*, 793 F.2d 275, 276 (11th Cir.1986) (the case originally adopting the three-part pain standard).

> **In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.**

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Ogranaja v. Commissioner of Social Security*, 186 Fed.Appx. 848, 2006 WL 1526062, *3+ (11th Cir. 2006) (quoting *Wilson*) (Table, text in WESTLAW); *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1216 (11th Cir. 1991).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." *Wilson, supra*, 284 F.3d at 1226. Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam*, 921 F.2d at 1215. The Eleventh Circuit has held that "pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)(citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)); *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1259 (M.D.Fla. 2005). However, the presence or absence of evidence to support symptoms of the severity claimed is a factor that can be considered. *Marbury*, 957 at 839-840; *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, if the Commissioner refuses to credit subjective testimony of the plaintiff concerning pain he must do so explicitly and give reasons for that decision. *MacGregor v. Bowen*, 786 F.2d at 1054. Where he fails to do so, the Eleventh Circuit

has stated that it would hold as a matter of law that the testimony is accepted as true. *Holt v. Sullivan*, 921 F.2d at 1223; *MacGregor v. Bowen*, 786 F.2d at 1054. Although the Eleventh Circuit does not require an explicit finding as to a claimant's credibility, the implication must be obvious to the reviewing court. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole. *Dyer*, 395 F.3d at 1210 (11th Cir. 2005) (internal quotations and citations omitted). And of course, the reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence. *Wilson*, 284 F.3d at 1225-1226; *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991); *Hurley*, 385 F.Supp.2d at 1259.

Underlying the *Hand* standard is the need for a credibility determination concerning a plaintiff's complaints of pain. Those complaints are, after all, subjective. "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain." *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[3] People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others. "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain. This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ." *Hand, supra,* at 1548-49. It is within the ALJ's "realm of judging" to determine whether "the

---

[3] Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

quantum of pain [a claimant] allege[s] [is] credible when considered in the light of other evidence." *Arnold v. Heckler*, 732 F.2d 881, 884 (11th Cir. 1984). Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that. The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief or the plaintiff's claims, is the basis for the ALJ's credibility determination.

Analysis

Here plaintiff contests the ALJ's rejection of Dr. Crosswright's opinions that plaintiff had significant limitations and was unable to work. Plaintiff says that the ALJ's entire discussion of Dr. Crosswright was as follows:

> The undersigned has considered Dr. Earl Crosswright's opinion that the claimant is unable to perform the requirements of sedentary work on a full-time basis (32F); however, Dr. Crosswright is a family physician, whose opinions are entitled to less evidentiary weight than those of Dr. Chen and Dr. KRUEGER, since their medical specialties are more pertinent to the claimant's impairments and resulting limitations.

(Tr. 26). Plaintiff says this is insufficient - that because Dr. Crosswright was a treating physician, his opinion in effect trumps others regardless of whether the other opinions are those of specialists. This is both factually and legally incorrect. The foregoing quoted language was indeed the only place the ALJ specifically mentioned Dr. Crosswright's opinion, but it did not appear in a vacuum. It immediately followed his discussion of the similarities between the opinions of Drs. Chen and KRUEGER, with the obvious implication that their opinions differed from that of Dr. CROSSWRIGHT. Thus, it was not the "only" consideration of Dr. Crosswright's opinion.

The ALJ can give more weight to the opinion of relevant specialists, in this case consulting physician Dr. Chen, an orthopedic surgeon, and treating physician Dr. KRUEGER, a pain management specialist. Title 20 C.F.R. § 404.1527(d)(5) provides that "more weight [is given] to the opinion of a specialist about medical

Case 3:07-cv-00450-MCR-MD   Document 18   Filed 08/20/08   Page 15 of 18

Page 15 of 18

issues related to his or her area of specialty than to the opinion of a source who is not a specialist." Although Dr. Chen was not a treating physician, Dr. KRUEGER was, and Dr. Kreuger's assessment was that plaintiff was limited as to her work duties, but might do sedentary work if she did not have to stand for any length of time. As noted earlier, Dr. Chen felt that plaintiff would have some limitation in ability to perform work-related functions, and then referred to his findings on the form in which he opined that plaintiff could lift and carry up to ten pounds occasionally, was restricted in standing to the extent that she needed an assistive device, and that she must have a sit/stand option (tr. 406, 410-11). The ALJ stressed that the opinions of specialists Dr. Chen and Dr. KRUEGER were generally consistent, and the record supports this finding.

The ALJ also indirectly addressed Dr. Crosswright's opinion when he analyzed plaintiff's subjective complaints of pain. He noted specifically that while plaintiff had a documented medical condition, her subjective complaints of pain were not supported by any medical findings beyond mild bulging in her low back. Plaintiff was examined by many specialists, and none found any medical signs consistent with the degree of pain of which plaintiff complained. The ALJ noted that no surgery was ever recommended, that plaintiff's physical examinations were generally benign other than as to her subjective complaints, that she drove, shopped, cooked and washed dishes, and that her doctors encouraged her to remain active (tr. 25-26)

Plaintiff's contention that the ALJ did not discuss her complaints of pain is incorrect. The ALJ specifically found that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. 25). He then immediately explained why he had made that finding by addressing the medical record as above (tr. 25-26). The medical record as a whole pointed to a person who complained of pain over an extended period, who was seen by numerous specialists, including one at a teaching hospital in Birmingham, but

whose physical examinations and other tests never uncovered anything more than mild disc bulging that did not impinge on the spinal canal and that did not merit surgery. Plaintiff's treating physicians apparently believed that she was in pain, and her apparent determination to find a solution to her pain may support this, but the ultimate decision on credibility was within the realm of judging of the ALJ. His determination was that plaintiff could work at the sedentary level, and his opinion was supported by substantial record evidence. Therefore, plaintiff is not entitled to reversal on this ground.

    3.    <u>Social Security Ruling 00-4P.</u>

Plaintiff contends that the ALJ failed to satisfy his affirmative responsibility to ask about any possible conflicts between the vocational expert and the *Dictionary of Occupational Titles* (DOT), citing SSR 00-4p. That Ruling provides that an ALJ will inquire as to whether or not there is consistency between the DOT and the vocational expert's testimony, and where there is conflict, the ALJ must elicit a reasonable explanation for the conflict before relying on the vocational expert's testimony in making a disability determination. While the ALJ in this case did not specifically ask the vocational expert about any possible conflicts between his testimony and the DOT, the ALJ noted in his decision that, pursuant to SSR 00-4p, the vocational expert's testimony was consistent with the information contained in the DOT (tr. 27).

Plaintiff asserts that there was likely a conflict between the vocational expert's testimony and the DOT because Dr. Chen indicated that plaintiff had to alternate sitting and standing, avoid pushing and pulling in her lower extremities, and was limited to occasional balancing, kneeling, and crouching and never crawling, stooping, or climbing. She does not identify such a conflict. And, the ability to push or pull and the postural functions of balancing, kneeling, crouching, crawling, or climbing are not usually required in sedentary work. *See* SSR 96-9p. Moreover, the vocational expert's testimony was in response to a hypothetical question that

encompassed all of Dr. Chen's limitations (tr. 491). While the DOT does not account for a sit/stand option, the vocational expert specifically took into account plaintiff's need to alternate positions when assessing which jobs she could perform (tr. 491). *See Carlson v. Chater*, 74 F.3d 869, 871 (8th Cir. 1996) (reaffirming that the DOT definition of a particular job represents only the approximate maximum requirements for each position, rather than the range). Thus, no real conflict existed between the vocational expert's testimony and the DOT. The failure by the ALJ to question the vocational expert about the consistency of his testimony with the DOT, if erroneous, was harmless.

The court can disregard any errors or defects that "do not affect any party's substantial rights." Fed.R.Civ.P. 61 (harmless error); *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir.1983) (applying the harmless error doctrine in the context of a social security case). However, reversal is appropriate if the ALJ fails to provide the court with "sufficient basis for a determination that proper legal principles have been followed." *Martin v. Sullivan*, 894 F.2d 1520,1529 (11th Cir. 1990). When an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand. *See Diorio, supra*; *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) ("[T]he ALJ's error in failing to ask the vocational expert about possible conflicts between his testimony and the *Dictionary of Occupational Titles* was harmless, since no such conflict appears to exist."). Here, while plaintiff suggests there is "likely" a conflict between the vocational expert's testimony and the job description in the DOT, she has not favored the court with anything showing there is *in fact* such a conflict. Plaintiff has failed to show any basis for reversal on this ground.

4.  <u>Daily activities.</u>

Finally, plaintiff contends that the ALJ erroneously evaluated plaintiff's daily activities to support his finding. Plaintiff sites *Venette v. Apfel*, 14 F.Supp.2d 1307 (S.D. Fla. 1998) in support. There the court found error where (1) there was only one

medical opinion in the record, (2) the opinion supported plaintiff's claimed disability, and (3) the ALJ based his rejection of that opinion on plaintiff's ability to do "some housework, light cooking and light grocery shopping" along with driving to the doctor, not going to the hospital or using an oxygen tank and being responsive to bronchodilator treatment with no signs of swelling. 14 F. Supp. 2d at 1314. *Venette* is not controlling precedent.  Here there were two physicians' opinions that contradicted rather than supported plaintiff's claim of disability, so plaintiff's daily housekeeping and similar activities were not the primary basis for disregarding a treating physician's opinion.  Plaintiff's daily activities were cited as just one fact out of many in support of the ALJ's finding.  *Venette*, therefore, is also factually distinguishable.  Plaintiff has not shown error, and is not entitled to reversal on this ground.

Accordingly, it is respectfully RECOMMENDED that the decision of the Commissioner be AFFIRMED, that this action be DISMISSED and that the clerk be directed to close the file.

At Pensacola, Florida this 20th day of August, 2008.


/s/ *Miles Davis*
**MILES DAVIS
UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636;** *United States v. Roberts,* **858 F.2d 698, 701 (11th Cir. 1988).**